Good morning, Your Honors. May it please the Court, Rob Roy Smith with Kilpatrick Townsend on behalf of the appellant Agua Caliente Band of Cahuilla Indians. With me at council table is the Tribes General Counsel John Plata, as well as my colleague Mark Reeves. And with the Court's leave, I would like to acknowledge elected members of the Agua Caliente Tribal Council who are here in court today. Your Honors, the state possessory interest tax that is assessed and collected by Riverside County is a tax on the leasehold interest in Indian trust lands. Counsel, I need for you to, if you don't mind, begin with the fact that many, many years ago, this Court upheld this exact tax from this exact county and raised by your client. And so we have to be persuaded, I think, that there is a subsequent Supreme Court or en banc decision that requires us to reconsider or we're not free to reconsider. So why don't we have to follow the previous case? Because the U.S. repudiated the reasoning of Agua Caliente with respect to the fact that where the Ninth Circuit held in 1971 that a tax on the use of land is not a tax on the land itself. Mescalero tells us that's no longer the law. It's also the fact that in both Agua Caliente and in the Fort Mojave case, Section 465 was not addressed in either of those cases. I don't know why, but it wasn't. To the extent this Court is also concerned about Agua Caliente and Fort Mojave. Let me just ask about that because the fact that an argument wasn't addressed or a piece of reasoning wasn't addressed doesn't necessarily mean that we don't follow something. If a case holds squarely that X is true and they have three reasons and the fact that they didn't consider a fourth reason or didn't really explain any reasons doesn't mean we don't have to follow it. So why does the absence of a discussion of Section 465 matter? It's only an additional reason. The primary reason is the fact of the reasoning of the U.S. Supreme Court in Mescalero, rejecting the reasoning of Agua Caliente with respect to its treatment of the possessory interest tax and whether it is a tax on a right in land itself. The other change in the law is the passage of the U.S. Supreme Court's decision in White In both Agua Caliente and Fort Mojave, the courts were looking for express congressional preemption. Right. But in Fort Mojave, we basically said that our previous 1971 case essentially used the Bracker analysis, even though it didn't know about Bracker yet, but that it followed more or less the same path. So haven't we, aren't we bound by that as well as an interpretation or understanding of our previous case? Well, I mean, Bracker is, Bracker is a, is a factually distinct analysis, right? So it would be, so the court would need to review the PIT as assessed and collected now under the Bracker analysis again. I don't think that really answers my question because in Fort Mojave, we said, whether correctly or not, but we said that our earlier case involving this tax used, not by that name of course, but used a Bracker analysis already. So if that's correct, why would it have to be done again? It would need to be done again then because of the adoption of the 2012 federal leasing regulations, which this court in DWA versus Department of the Interior reviewed those regulations, discussed the 11th Circuit's discussion of those regulations in Seminole Tribe versus Strandberg, and found that those federal leasing regulations are another substantive change in the law. So that too would require the court to take a look at the PIT as applied to Agua Caliente trust lands under, under the new framework, the new statutory regulatory framework that was created by those leasing regulations that were adopted in December of 2012. Your Honors, by taxing possession, a right that is intimately connected with the land, the possessory interest is taxing Agua Caliente trust land itself. And as applied in this case, that means that on the Agua Caliente reservation, the PIT is being applied to over 20,000 leases on lands that comprise 70% of the reservation. As a matter first of federal common law, these Agua Caliente Indian trust lands were exempt from state and local taxation when the reservation was first established by executive order in the 1870s. That's recognized by the U.S. Supreme Court in Inouye, Kansas Indians in 1866, and again by the U.S. Supreme Court in 1903 in United States versus Ricker. In 1934, when Congress enacted the Indian Reorganization Act, which includes Section 465, which has And when we consider how 465 gets applied to these Agua Caliente trust lands, this court is bound by and needs to look to the U.S. Supreme Court's decision in Mescalero, Apache in 1973. In fact, far more so than Mescalero, Agua Caliente's interest in these Indian trust lands is more than sufficient for the tax immunity that was recognized and extended by Congress in Section 465 to apply. Like here, the lands in Mescalero were not acquired pursuant to Section 465. The Supreme Court noted in Mescalero that, in fact, the lands were not technically acquired in trust for the Indian tribe at all under any statute, and that's because the land that issued Mescalero, this is at 146 of the opinion, was off-reservation land, and it was land that was owned by the United States Forest Service that was leased to the tribe for the ski resort activities. Is it your position that any land owned by the tribe, no matter how it may be used or leased, is exempt? Is exempt from taxes that apply to those lands or rights and land? Yes. Yes. So it's a very broad application. And there is no scenario you can give me that would suggest a different result. Let me answer your question in two ways, Your Honor. First, again, I want to go back to Mescalero, because Mescalero tells us at 158 of that decision that a tax on use or possession of land is a tax on the bundle of privileges that make up land ownership. Tax upon use is a tax upon the property itself. Correct, Your Honor. No distinction. No distinction, right? So that is the binding law of the land. Now, the distinction would be a situation, no pun intended. The distinction would be, and where I think there would be a state tax that would be perfectly acceptable under this legal landscape, is where the tax is being assessed on some non-Indian activity taking place on the land. So let's say a state income tax, for example. Well, the lessees in this scenario are already non-Indians, right? That is correct. But the tax is being assessed on their use of the land, right? The PIT is a tax on the land itself. It is not a use tax, right? And that's another error that the district court made. You know, it's semantics, but it's a tax on the possessory right that the lessee has. It's not a tax on the lessor or on the value of the land itself. It's a tax on the value of the lessee's interest, which might be small or large depending on how valuable the particular place is to commerce or other uses that the non-Indian lessee wishes to make of that lease. So it isn't exactly a tax on the land or the lessor. But it's not a semantic distinction, right? It is a tax on the use of land, which again Mescalero found would be preempted on the part of the lessee. No, it's a tax on the possessory interest of the lessee. I mean, that's why I say it depends on how you phrase it, because the lessee may choose to make no use at all. It's a tax on the value to the lessee of having that option. Well, I think your hypothetical goes to show exactly why this is a tax on the land itself and not some use tax on any activity. And that's because in the comment that you made, Your Honor, if a lessee of Agua Caliente Indian Trust Lands makes no use of their lease during a year, never visits the reservation, they pay the same amount of possessory interest tax value, notwithstanding, as a lessee who makes daily use of the reservation. The tax is not on activity. How is the tax calculated? It's one percent of what amount? One percent on the interest created by the lease. That's from the language of the Assessor's Handbook. And so what the county is... It's a practical matter, I'm asking. How is that amount calculated? It is calculated on the value of the Indian land lease payment. It's not valued by some other activity. It's the rent. The rent. That's why I'm just saying it in plain language. So you just take one percent of whatever your annual rent payment is, that's the amount you have to pay? That's correct. And I think that brings the PIT, makes it very factually similar to the rental tax in Florida that was held to be preempted by both 465 and Bracker by the 11th Circuit in 2015 in Seminole Tribe versus Strandberg, right? There too, the tax was assessed against a non-Indian lessee as a trust land. The tax was a... But there was a key difference between that case and this case. Probably two differences, right? One being key, which is the 465 question, right? Those lands were taken into trust pursuant to 465. That issue was so... Our factual scenario there was not addressed. The other distinction from Seminole Tribe versus Strandberg would be that there, even though the... If the tax was not paid, it was a lien upon the personal property of the lessee. Florida had another provision that then said, look, if it's still not paid, then they can go after the lessor, being the Indian or the tribe. That doesn't exist here. That's a huge difference because it puts at risk the Indian trust land itself, even though it's down the road. And here, that is not an option. As I understand it, this tax, if not paid, cannot be collected ever from the tribe or in any way create a lien upon the land. Am I wrong about that? You're not wrong about that, but I think that's the distinction without difference. And that's because the fact that Florida could conceivably go after the tribe if the rental tax was not paid was not a dispositive factor in the 11th Circuit's reasoning. Well, I'm not asking about the 11th Circuit's reasoning. I'm asking just as a straight-up question where that is the case, where it can never, never become a lien on the Indian land, and where it can never be collected from the tribe. That seems to make a difference to the analysis. But it can never be collected from the tribe anyway. The state cannot impose a lien upon United States trust land. That's right. And they haven't. That's exactly my point in asking you the question. I don't understand why that doesn't sort of create the appropriate distance and make the tax permissible. Well, then I think we come back to Mescalero again, right? There you had the use tax that was being assessed on the tribe's leasehold interest in United States Forest Service land. And the Supreme Court had no difficulty finding that that arrangement between the United States and the tribe was sufficient to bring it within the tax immunity that was afforded by Section 465. And if this Court applies Mescalero, or applies 465 as it was interpreted by Mescalero, the same result gets reached as to the possessory interest tax. Did you want to save some rebuttal time? I would, Your Honor, yes. I would like to reserve the remaining time for rebuttal. Thank you. May it please the Court, Benjamin Sharp on behalf of Riverside County. The county is split time with Desert Water Agency. I will speak for 11 minutes. Mr. Walston will address it. You'll have to keep track of your own time. Can you, at the outset, and I apologize for jumping on you so quickly, I'd like you to distinguish the pit tax from the use tax at issue in Mescalero. You've just heard your opponent mention Mescalero at least a dozen times that you lose because of that case. I'd be happy to address it, and that is a critical question. The Supreme Court has repeatedly admonished that the first and often the dispositive question in Indian tax cases is who bears the incidence of taxation. It's a critical question because I think in all instances it leads to the right analysis, preemption analysis, and some it's dispositive. If the incidence of the tax falls upon an Indian engaged in activity in Indian country, it is in all instances per se an unlawful tax. If the incidence of taxation falls on a non-Indian engaged in on-reservation activity, it must be upheld if the balance of interest justifies the tax to the state's interest. But there is no instance in which a tax, the instance which falls on a non-Indian, is there a categorical or per se approach. In Mescalero, Judge Zaharie, the taxpayer was the Apache tribe. The incidence of taxation fell on the tribe. The use of the land, which Mr. Smith concentrates on, was the Indian tribe's use. In this case, it's the use of the land. If you will, it is a property right that is carved out of the beneficial interest and trust land that the Indian holds. In other words, the Indian lessor creates and conveys a property right to a non-Indian. It's perfectly appropriate and lawful to tax that non-Indian on that property right. But I don't think there's any reasonable way of claiming that that is a tax on the land or on the Indian because never is that tax assessed on the Indian's beneficial ownership. If the Indian leases land as the tribe does lease from its members, there's no possessory interest tax assessed on the Indian that leases it, and there's no way that the tax assessed on a non-Indian is passed on to the tribe or the Indian lessor, or are they ever held accountable because there is no lien that can be attached for non-payment. So the critical distinction in this case is determined by upon whom the instance of taxation falls. There's no question here the instance of taxation falls on a non-Indian. So the per se law of either the common law doctrine enunciated by the Supreme Court and Oklahoma Tax Commission v. Chickasaw Nation, or the per se approach from 465 of the IRA has no bearing to this case because there is no taxation of the Indian or Indian lands. So when Miscalero says a tax upon use is a tax upon the property itself, you really need to flesh out a few more details behind that broad statement. That is a perfectly sound statement, but it's whose use is being taxed. If it's the Indian use that's being taxed, it's probably unlawful. If it's non-Indian use, it's probably not. And that was the precise question addressed by this Court in the Confederated Tribes of Jehelas Reservation v. Thurston County, Washington. In that case, Washington agreed that it couldn't tax trust land, but they got this idea that the permanent improvements on that land, a lodge, were owned by a joint venture. So it said, aha, we can tax the joint venture, but it's not because it's not the tribe. But the Court in the case rejected that argument, rejected the distinction from Miscalero by saying, the tax immunity does not depend on the form of business that the tribe chose to organize. In other words, in that case, the Court said, it is a preempted tax because the tax is on the joint venture created by the tribe, 51% owned by the tribe, controlled by the tribe. It is a tax on the tribe. And Jehelas, I believe, cited the previous Aguacaliente 1971 decision with approval. It did, and said, well, first of all, Jehelas refused to apply Bracker because the tax wasn't on a non-Indian. But it did say that both subsequent Ninth Circuit cases, Havapai Prescott Indian Community, Salt River Indian Community, Gila River Indian Community, had all applied lessee of trust land because the incident of taxation at each of those fell on the lessee. It also said that even before Bracker, we did the same thing, and it cited, right. It wasn't as clearly articulated as the Bracker analysis. In fact, I would submit to you the first balancing test formed by the Supreme Court was an 1891 case called Thomas v. Gay where non-Indians were grazing cattle on reservation and were taxed on the personal property. And the court, again, balanced the interest and said that the state interests were great enough to sustain the tax, which is exactly the situation here. When you get into the Bracker analysis, it really boils down to whether the tax is justified because either it's the state's regulation of the taxpayer's activity or the services are rendered to that taxpayer. I'll go out on a limb here and say I do not believe there is a case ever been decided whether the state's interests are more clearly or soundly existing as in this case. All of the government services that lessees of this property are subject to receive are funded in part by the Possessory Interest Tax, the 1% tax, and they include everything that the state provides. There are no services of any matter provided by the federal government or by the tribe. So the state's interest is absolutely paramount. Judge Gee in the district court found that the federal interests were great, but they were clearly and easily overwhelmed by the interests of the state. Here, the interest that is taxed is the private use of tax-exempt property. It is used for residences and for businesses. In that sense, it is not any different from the use of the variety of other Ninth District of trust land. Some of those were to run a hotel or to run retail establishments, but in all instances, the tax was on a non-Indian. In all instances, significant government services were provided by the statute and jurisdiction. In all instances, those taxes were upheld. I find that the Confederated Tribes case supports a lot of what you argue in your brief. Your argument in section 465 is dicta. Comment. Does that case control the outcome in this case or not? I would concede that it does not control in as much as the determination holding the case was under 465. The distinction of the Possessory Interest Tax, I think, is very persuasive, but since it was not decided on the basis of Possessory Interest Tax or on the basis of Bracker, I guess, technically, that footnote 7 is probably dictum. But I don't think that undercuts its full force and effect. I mean, the opinion quite clearly said that 465 does not apply to Possessory Interest because they're not taxes on land. It cited Agua Caliente 1 as support for that, and it also could rely on the definitive interpretation of the Possessory Interest Tax by the California State Courts in the city of Fresno, the United States. That case was upheld in the Supreme Court, and quite clearly, it found that Possessory Interest Tax was not a tax on Indian land. Actually, in that case, it was federal land or a federal function, just as it is not a tax on Indian land or an Indian function in this case. I would like to quickly address Seminole because Mr. Smith claims that that's on all fours. The Seminole case quotes the Florida rental tax at the beginning of the opinion, and I'm quoting this, it is a tax on the privilege of engaging in the business of renting or leasing real property. In that case, the entity that was engaged in that business was the Seminole Tribe of Florida. When you ask the question, where does the interest of taxation fall? It quite clearly, for that case, tells you two things. If it's on the business operated by a tribe on reservation, it is per se unlawful, and the outcome of that case, I submit, is correct. The way the court got to that outcome, I would suggest to you, is in all respects, wrong. First of all, it said that 465 applied. Well, if it's a tax on the business of leasing property, it is not a tax on the land, so 465 shouldn't apply. Secondly, if the incident of taxation falls in the tribe, as it did there, quite in Wagnon v. Prairie Band Potawatomi Indians, the Supreme Court said that it only applies to non-Indians, where the incident of taxation falls on non-Indians. The answer to Seminole is it's a right conclusion, but all the discussion of 465 and all the discussion of Bracker is at best dicta, and at worst, simply dead wrong. That is the only case, your honors, that I tried to apply section 465 to a non-Indian. So all's not so well that ends well. Well, I guess so. Anyway, if there are no more questions, I will turn this over to Mr. Walson. You may do that. I'm Roderick Walson. I represent Desert Water Agency. I believe that Judge Graber correctly addressed and discussed the issue that's before this Court in saying that this Court has, on two prior occasions, addressed the question of whether a county possessor interest tax is valid or preempted as applied to non-Indian lessees. And the Court in both of those cases, of course, held that the county tax was not preempted. The tribe has argued that these decisions were repudiated by the Supreme Court in the case of Wagnon v. Prairie in the Bracker case, but Bracker did not repudiate those decisions. In fact, Bracker did not establish a new principle of preemption law, but rather articulated the principle that the Supreme Court had always applied in past cases. In fact, the Bracker case itself said at the outset, quote, we have examined our past cases, and here's the principle, the balancing principle, that we have applied in all of these past cases. So this balancing principle was in effect long before Agua Caliente and long before Fort Mahoney. Where in Agua Caliente did we actually go through the balance? Sorry? Are you not able to hear me? Yes. I can't hear you. I didn't hear you. Okay. I'm asking you where in Agua Caliente did we go through the balancing of interests, the distinct, the three distinct interests that Bracker requires? I don't see that in the case. I'm not sure I understood your question. Where did the Bracker? Okay. Let me put it this way. I don't think we're free to just cite Agua Caliente and be done, okay? Because I think the analysis we went through there does not map on to the balancing analysis that Bracker requires, and obviously Bracker came down after both of the decisions that you are relying on. So all I'm asking is, why don't you respond to that? Because I'm not persuaded by the argument you made in your brief that we are bound by our prior decisions. Well, I think that the answer to the question is that this court in the Chihalas case specifically said that the court had applied the same kind of analysis in the Fort Mojave case in particular that the Supreme Court had applied in Bracker. So it seems to me that there is a continuum then of the Ninth Circuit's decision in Fort Mojave, which applied a kind of a quasi-Bracker analysis in balancing the interest, and then the Supreme Court's decision later in Bracker, which basically summarized what the court's jurisprudence along these lines had been, and of course the case before this court. So it seems to me that the court in Fort Mojave did indeed discuss and apply the Bracker kind of analysis. As a matter of fact, the court in Fort Mojave specifically addressed the Mescalero decision, which of course dealt with the 465 issue, and it examined Mescalero and said that under Mescalero, Mescalero did not preempt the county's possessory interest tax in this case. So once again, this court in Fort Mojave essentially addressed the kind of quasi-Bracker analysis that we think is that applies under Bracker, but also applied long before Bracker was decided. So there is kind of a continuum in our view that this test has always been applied, and that the Supreme Court and that the Ninth Circuit in the Fort Mojave case applied the same kind of analysis. Turning to the Mescalero decision itself, we think that the Mescalero decision does not support the tribe's argument. It of course argues that Mescalero is dispositive here because it specifically addressed the county's ability to tax, but in Mescalero the... Counsel, you've exceeded your time. If you would wrap up in a sentence or two, I'd appreciate it. Well, I was going to just simply say that Mescalero does not support the tribe's argument, and in fact on page 157 of the court's decision, the court specifically stated as follows, quote, less seas of otherwise exempt Indian lands are not, are subject to, are subject to taxation, end quote. So the court in Mescalero specifically said that this kind of tax is valid and is not preempted. Thank you, Counsel. Mr. Smith, you have some Thank you, Your Honor. Let me briefly start by addressing the last comment that was made by Mr. Walston. That comment made from Mescalero is made with respect to the gross receipts tax, which was found not to be preempted as a matter of federal law within Mescalero, and it's an unremarkable proposition, of course, as we discussed, Your Honor, that there are certain taxes that do apply to non-Indians within Indian country and would continue to even under our construction of section 465. The legal incidence here is not dispositive, at least as to respect to section 465, right? 465 is concerned with the status of the land itself, not the identity of the taxpayer. The identity of the taxpayer is relevant when it comes to, when it comes to BRCA balancing. With respect to Chehalis, I agree with Mr. Sharp that the court's discussion of Agua Caliente and the preemption of PIT was in the dicta, and another panel of this court has so held in Department of, Desert Water Agency versus Department of the Interior, 849 F. 3rd, 1256. With the little bit of time I have left, I want to briefly talk about BRCA, because here's one of the more significant errors that the district court made below. To my knowledge, it's the first time that a lower court has found that there is an exclusive federal regulation when it comes to the leasing of Indian trust lands. She found it was exclusive and pervasive, but nonetheless found that, as Mr. Sharp said, these generalized state interests, the fact that these services are provided to everyone, everywhere in the county, can still nonetheless survive on balance. And that's not the law of this circuit. This court in Verona band stated that there has to be some nexus between the taxed activity and the services provided. In Yavapai Prescott, this court, I think it's page 1111 of that decision, acknowledged that where there's a strong federal interest, the state tax must be more narrowly tailored. And in Hoopa Valley, this court acknowledged that there has to be a direct connection between the tax and the way those services are provided. And the county admits it plays no role with respect to land leasing. And for those reasons, we ask that this court reverse the district court and preempt the PIT as a matter of federal law. Thank you, counsel. The case just argued is submitted and the arguments that all of you presented were very helpful to the court. We appreciate it. And we are adjourned for this morning's session.
judges: Graber, Watford, Zouhary